# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CALVIN B. THOMAS, | § | |
| | § | No. 439, 2013 |
| Defendant-Below, | § | |
| Appellant, | § | |
| | § | Court Below: |
| v. | § | Family Court of the State |
| | § | of Delaware, in and for |
| STACEY L. THOMAS, | § | New Castle County |
| | § | |
| Plaintiff-Below, | § | File No. CN11-06308 |
| Appellee. | § | |

Submitted: September 17, 2014
Decided: October 1, 2014

Before **STRINE**, Chief Justice; **HOLLAND**, **RIDGELY**, and **VALIHURA**, Justices; and **DAVIS**, Judge[*]**, constituting the Court *en Banc*.

Upon appeal from the Family Court of the State of Delaware. **AFFIRMED**, in part, and **REVERSED**, in part, and **REMANDED**.

Gary L. Smith, Esquire, Gary L. Smith, Attorney At Law, Newark, Delaware, Attorney for Defendant-Below, Appellant.

David J. J. Facciolo, Esquire, Minster & Facciolo LLC, Wilmington, Delaware, Attorney for Plaintiff-Below, Appellee.

**HOLLAND**, Justice:

---

[*] Sitting by designation under Del. Const. art. IV, § 12.

On December 15, 2011, Stacey L. Thomas (the "Wife") petitioned the Family Court for a divorce from Calvin B. Thomas (the "Husband"), which was granted on February 16, 2012. Thereafter, the Family Court rendered final decisions on several ancillary matters. The Husband raises six issues in this appeal: first, the Family Court erred by not equally dividing the marital property; second, the Family Court erred by determining that the Wife was dependent and therefore entitled to alimony; third, the Family Court erred by applying a 2.5 percent interest rate to calculate the Wife's income from her inheritance, instead of some higher interest rate; fourth, the Family Court erred when it refused to retroactively modify the amount of the interim alimony award; fifth, the Family Court imposed an impermissible punitive fine when it found the Husband in contempt of its interim alimony order; and sixth, the Family Court erred when it awarded the Wife a portion of her attorney's fees.

We have concluded that the Family Court erroneously applied the alimony statute in making its final award. We have also determined that the other issues raised by the Husband are without merit. Therefore, the judgment of the Family Court is affirmed, in part, and reversed, in part. The matter is remanded to the Family Court for further proceedings in accordance with this opinion.

*Facts*

The Husband is an independent contractor for Schmidt Baking Company, with an income that the Family Court found to be approximately $60,000 per year. The Wife works two part-time jobs at an hourly wage, with a total income of $16,700 per year. On

2

March 8, 2012, the Wife filed a motion for interim alimony. In her motion, the Wife acknowledged that she had inherited $450,000.

The parties agreed that the inheritance was considered to be separate property under 13 *Del. C.* § 1513(b)(1) and it was not divided as a marital asset. On that basis, the Husband argued, in his answer, that the Wife's motion for interim alimony should be denied because "[the Wife] is not dependent upon respondent for support when she has $500,000 in the bank that could be used for that purpose." On April 30, 2012, the Family Court awarded the Wife interim alimony of $2,018 per month, a calculation that was based, in part, on interest income earned on an inheritance valued at $450,000 at an interest rate of 2.2 percent.

The Husband filed a motion for reargument on May 7, 2012. In the motion, the Husband pointed out that when the Wife filed her Rule 16(c) financial report, she disclosed that she actually had $629,359 in that account, as well as $5,115 in a different account. The Husband requested, among other things, that the Family Court recalculate the interim alimony based on this new amount, because the additional $184,474 would generate more interest income. The Family Court denied the motion on May 30, 2012, noting that "[t]his figure was not available to the Court at the time the Order was issued" and that "the Court has no information regarding the source of these funds."

On August 23, 2012, the Wife filed a rule to show cause petition because the Husband stopped making his interim alimony payments. The Family Court held a hearing on the final distribution of marital assets and the rule to show cause petition on February 7, 2013. Both the Husband and the Wife testified at the hearing. During his

3

testimony, the Husband admitted that he was living with and paying all of the expenses for his girlfriend, who had been out of work. These expenses included the mortgage, utilities, and the cost of five cats.

The Family Court entered its final order on alimony and the division of marital property on May 6, 2013. The Family Court divided the marital property 60/40 in favor of the Wife, because the marital residence was a gift from the Wife's parents and the Husband had a higher income. The Family Court also determined that — despite her sizeable inheritance — the Wife was dependent on the Husband, and ordered the Husband to make alimony payments of $949 per month. The money from the inheritance was in a money market account, so the Family Court used a 2.5 percent interest rate to calculate that the Wife would receive $15,725 in interest income each year from the inheritance, or about $1,310 per month.

The Family Court also held the Husband in contempt of the April 30, 2012 order and ordered the Husband to pay the Wife the outstanding balance of $10,126. The Family Court refused to retroactively modify the amount of the temporary alimony award, even though it determined in the final order that the amount of the interim award was more than the Husband was able to pay. Finally, the Family Court ordered the Husband to pay the Wife's attorney's fees and costs associated with the April 30, 2012

order.[1]  The Husband filed a motion for reargument on May 16, 2013, which the Family

Court denied on July 22, 2013.

## *Marital Property*

The Family Court has broad powers under 13 *Del. C.* § 1513 to distribute property

following a divorce, and under 13 *Del. C.* § 1512 to determine what, if any, alimony is to

be awarded.[2]  The usual standard of review of an alimony award is whether the Family

Court abused its discretion.[3]  The scope of the review "extends to a review of the facts

and law as well as to a review of the inferences and deductions made by the Trial

Judge."[4]  The Family Court's rulings "will not be disturbed on appeal if: (1) its findings

of fact are supported by the record; (2) its decision reflects due consideration of the

statutory factors found in section 1512; and (3) its explanations, deductions and

inferences are the product of a logical and deductive reasoning process."[5]

In the Family Court, the Wife argued that the marital property should be divided

70/30 in her favor, and the Husband argued that the marital property should be divided

60/40 in his favor.  The parties' principal asset was their marital residence, which was

worth $221,000.  The Wife's father purchased the marital residence in 1990, and initially,

the deed was in the Wife's parents' names and the parties' names.  The Wife's parents

transferred the property to the Wife and the Husband in 1996, and then it was deeded

---

[1] Including the Wife's motion for temporary alimony, her response to the Husband's motion for reargument, her response to the Husband's motion to stay, her response to the Husband's application for certification of interlocutory appeal, and her petition for rule to show cause.

[2] *R. E. T. v. A. L. T.*, 410 A.2d 166, 168 (Del. 1979).

[3] *Gray v. Gray*, 503 A.2d 198, 201 (Del. 1986) (citing *R. E. T.*, 410 A.2d at 168).

[4] *Gray*, 503 A.2d at 201 (quoting *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979)).

[5] *Id.*

jointly. The parties never had to make mortgage payments on the property. Because of the Wife's parents' contribution to the purchase of this asset and because of the Husband's greater income, the Family Court determined that a fair and equitable division of the marital property, including the marital residence, would be 60/40 in the Wife's favor.[6]

On appeal, the Husband argues that the Family Court abused its discretion and should have divided the marital property equally. The Husband argues that the Wife's parents' contribution of the marital residence was not a reason to depart from a 50/50 split because it was gifted to them both equally or, alternatively, that the Husband's higher income was not a reason to depart from a 50/50 split because of the Husband's inferior economic position once the Wife's inheritance is taken into account.[7]

Section 1513 of Title 13 excludes certain property from the definition of marital property that is subject to equitable distribution, but the statute does not exclude property that was jointly acquired by gift.[8] Because the home was jointly gifted to both the

---

[6] The Family Court stated that "[g]iven the disparity in income, the Court finds that Husband enjoys opportunity for greater earnings than Wife and, therefore, this factor favors granting Wife a slightly larger percentage of the marital estate." Family Court's Decision on Alimony (May 6, 2013). The Family Court also stated that "the Court finds that it is fair that Wife receives a disproportionate percentage of the former marital home in light of her family's contribution." *Id*.

[7] The Husband does not cite any cases to support his position, but merely cites the statute governing disposition of marital property, 13 *Del. C*. § 1513.

[8] 13 *Del. C*. § 1513(b) provides that: "For purposes of this chapter only, "marital property" means all property acquired by either party subsequent to the marriage except:
>   (1) Property acquired by an individual spouse by bequest, devise or descent or by gift, except gifts between spouses, provided the gifted property is titled and maintained in the sole name of the donee spouse, or a gift tax return is filed reporting the transfer of the gifted property in the sole name of the donee spouse or a notarized document, executed before or contemporaneously with the transfer, is offered demonstrating the nature of the transfer.

Husband and the Wife, the home was held as a tenancy by the entirety. Generally, upon the dissolution of a marriage, a tenancy by the entirety devolves as a matter of law into a tenancy in common between the former spouses, with each owning a one-half interest.[9]

But 13 *Del. C.* § 1513(a) provides that "upon request of either party, [the Family Court shall] equitably divide, distribute and assign the marital property between the parties without regard to marital misconduct, in such proportions as the Court deems just."[10] "Under [13 *Del. C.* § 1513(c)], the Family Court is empowered to divide and assign marital property regardless of how title is held . . . ."[11] The Family Court is instructed to consider "all relevant factors," including eleven that are specifically listed.[12] Thus, the Family Court is not required to award half of the marital property to each party, and may determine that it is more equitable to divide the marital property in unequal

---

(2) Property acquired in exchange for property acquired prior to the marriage;
(3) Property excluded by valid agreement of the parties; and
(4) The increase in value of property acquired prior to the marriage."

[9] *Mitchell v. Wilmington Trust Co.*, 449 A.2d 1055, 1059 (Del. Ch. 1982), *aff'd sub nom. Wilmington Trust Co. v. Mitchell*, 461 A.2d 696 (Del. 1983); *Wife W. v. Husband W.*, 307 A.2d 812 (Del. Super. 1973), *aff'd.*, 327 A.2d 754 (Del. 1974).

[10] 13 *Del. C.* § 1513(a).

[11] *Husband R.T.G. v. Wife G.K.G.*, 410 A.2d 155, 159 (Del. 1979). 13 *Del. C.* § 1513(c) provides that "[a]ll property acquired by either party subsequent to the marriage is presumed to be marital property regardless of whether title is held individually or by the parties in some form of co-ownership such as joint tenancy, tenancy in common or tenancy by the entirety."

[12] 13 *Del. C.* § 1513(a). Those factors are: "(1) The length of the marriage; (2) Any prior marriage of the party; (3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties; (4) Whether the property award is in lieu of or in addition to alimony; (5) The opportunity of each for future acquisitions of capital assets and income; (6) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker, husband, or wife; (7) The value of the property set apart to each party; (8) The economic circumstances of each party at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the party with whom any children of the marriage will live; (9) Whether the property was acquired by gift, except those gifts excluded by paragraph (b)(1) of this section; (10) The debts of the parties; and (11) Tax consequences." *Id.*

percentages, so long as its decision is supported by the factors contained in § 1513(a) and any other relevant factors.[13]

One of the factors listed in the statute that the Family Court is directed to consider when it is deciding how to equitably distribute property is "[w]hether the property was acquired by gift."[14] The statute does not provide any additional guidance about whether or how to consider the identity or intent of the giver, or even whether the gift was given jointly such that it immediately became marital property or separately such that it only later became marital property through transmutation.[15] When determining the equitable distribution of marital assets, Delaware courts have given extra weight to the party whose family contributed the gift, including by increasing the percentage of the asset that is allocated to that party.[16] Because the statute instructs the Family Court to consider "all

---

[13] *Wife (L. R.) v. Husband (N. G.)*, 406 A.2d 34, 35 (Del. 1979) ("To the extent that the Trial Court's order takes away any such interest and assigns it to the husband, then the Court's reason for doing so must be supported under the criteria stated in § 1513.").

[14] 13 *Del. C.* § 1513(a)(9); ARNOLD H. RUTKIN, 3 FAMILY LAW AND PRACTICE § 37.04(3)(b)(ii) (2006) (noting that "one factor that a court must consider in making equitable distribution is whether property was acquired by gift").

[15] Transmutation is the process whereby parties can modify the status of the property they own from separate property into marital property.

[16] *See, e.g.*, *L.M. v. R.M.*, 2007 WL 3202334, at *8 (Del. Fam. Ct. Aug. 3, 2007) ("The Court also took into consideration that Wife's father provided the mortgage for the marital home and ultimately forgave the principal on the mortgage. This significant gift now accounts for 78% of the marital estate and is a major reason for Wife receiving 57% of said estate despite the parity in the parties' receipt of pension benefits.") (internal citations omitted); *Ercole v. Ercole*, 1998 WL 918823, at *2 (Del. Fam. Ct. July 30, 1998) ("[S]ince the gifts were made to both Husband and Wife, the Court will consider the $30,000 as jointly-owned marital property subject to equitable division. Since the funds came from Husband's family, however, the Court will take that fact into consideration in allocating the percentage distribution.") (internal citations omitted); *Hanley v. Hanley*, 1993 WL 777367, at *3 (Del. Fam. Ct. Dec. 16, 1993) ("The important fact is that this major contribution to the marital estate came from one of Husband's parents. . . . Wife will now share substantially in the equity in this property and receive a major benefit from this money which she would receive no benefit from if it had it been strictly inherited, the Court balances this significant financial contribution from Husband's side of the family with Wife's extra

relevant factors" and then explicitly instructs the Family Court to consider "whether the

property was acquired by gift," and because Delaware courts have routinely made similar

considerations in the past, the Family Court did not abuse its discretion by considering

the fact that the marital residence was a gift from the Wife's parents when determining

how to equitably divide the marital property. Although the Family Court should not

reflexively look behind the titling of a joint gift to spouses, here, the relevant factual

record supported the Family Court's decision to make a moderate adjustment in favor of

the Wife because the gift seemed to have been motivated primarily by the desire of the

parents of the Wife to help her spend more time on her own parental duties and to help

their grandchildren live in better circumstances. And by making only a moderate

adjustment, the Family Court gave heavy weight to the joint nature of the gift.

### *Alimony Award*

The Husband also argues that the Family Court should not have determined that

the Wife was entitled to alimony, because she does not meet the statutory requirement of

dependency. The Husband notes that the Wife possesses more than $629,000 in liquid

assets from an inheritance. The parties agree that the inheritance itself is not a marital

asset that should be equitably distributed, but they disagree about whether the inheritance

disqualified the Wife from dependency for alimony purposes. The Husband phrased this

issue as "not the amount or duration of alimony Wife may be entitled to but whether she

---

entitlement in the marital estate due to her inferior health condition."); *Voss v. Voss*, 1992 WL 120270 (Del. Fam. Ct. Apr. 28, 1992) ("In allocating marital property, the Family Court is required to give special consideration to property which one spouse has received in the form of gifts or inheritance. . . . [T]he Family Court, in the exercise of discretion, may favor one party by recognizing that certain property has its origin in a gift . . . .") (internal citations omitted).

9

is entitled to any alimony at all, given the fact that she has a bank account that contains

$629,000 that is available to her for her own support."[17]

In order to be awarded alimony, the Wife must demonstrate by a preponderance of

the evidence[18] that she "[i]s dependent on the [Husband] for support" and that she

"[l]acks sufficient property, including any award of marital property made by the Court,

to provide for [her] reasonable needs."[19]  The Wife bears the burden of proof to show that

she is dependent and that she is unable to support herself.[20]  Dependency is not defined

by the statute, but it "has been defined as a relative matter."[21]  We have also interpreted

dependency to mean "more than a minimal existence or subsistence level."[22]  The

meaning of dependency must be "measured against the standard of living established by

---

[17] Husband's Motion for Interlocutory Appeal (May 7, 2012).

[18] *Martin v. Martin*, 857 A.2d 1037, 1049 (Del. Fam. Ct. 2004); *Gregory J. M. v. Carolyn A. M.*, 442 A.2d 1373, 1375 (Del. 1982) (citing *Husband B. v. Wife B.*, 295 A.2d 701 (Del. 1972))..

[19] 13 *Del. C.* § 1512(b) provides that: "A party may be awarded alimony only if he or she is a dependent party after consideration of all relevant factors contained in subsection (c) of this section in that he or she:
>    (1) Is dependent upon the other party for support and the other party is not contractually or otherwise obligated to provide that support after the entry of a decree of divorce or annulment;
>    (2) Lacks sufficient property, including any award of marital property made by the Court, to provide for his or her reasonable needs; and
>    (3) Is unable to support himself or herself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that he or she not be required to seek employment."

[20] *Ann Marie H. v. Joseph J.H.*, 456 A.2d 1233, 1234 (Del. 1983); ARNOLD H. RUTKIN, 2 FAMILY LAW AND PRACTICE § 11.03(1)(a) (2006) ("The spouse seeking a maintenance award has the burden of demonstrating the need for support.  If a spouse cannot make an adequate showing of need, support will be denied.").

[21] *Adelaide A.G. v. Peter W.G.*, 458 A.2d 702, 705 (Del. 1983) (internal citation omitted) (noting that "Wife's assets (§ 1512(b)(2)) and employability (§ 1512(b)(3)) are clearly and expressly relevant to a determination of her dependency.  However, wife's assets and income must then be related to husband's and their respective needs and goals of self-sufficiency."); RUTKIN, at § 11.03(1) ("The relative economic circumstances of the parties and the ability to pay maintenance are the primary considerations when setting interim spousal support.").

[22] *Gregory J. M.*, 442 A.2d at 1375.

the parties during their marriage."[23] The Family Court found here that "[t]he parties

enjoyed a middle class standard of living during their marriage."[24]

When setting an order for alimony, 13 *Del. C.* § 1512(c) instructs the Family Court

to consider "all relevant factors," including "[t]he financial resources of the party seeking

alimony, including the marital or separate property apportioned to him or her, and his or

her ability to meet all or part of his or her reasonable needs independently."[25] The

Family Court is also instructed to consider "[a]ny other factor which the Court expressly

finds is just and appropriate to consider."[26] Therefore, "[e]vidence that the spouse

---

[23] *Id.* (quoting *Husband J. v. Wife J.*, 413 A.2d 1267, 1269 n.2 (Del. Fam. Ct. 1979)).
[24] Family Court's Decision on Alimony (May 6, 2013), B218 at *14.
[25] 13 *Del. C.* § 1512(c)(1); *see also Martin v. Martin*, 857 A.2d 1037, 1049 (Del. Fam. Ct. 2004) ("In making that threshold determination of dependency, the Court views the petitioning party's circumstances in light of the specific factors set forth in Title 13, Section 1512(c). The first (1st) of those factors involves a review by the Court of the financial resources of the party seeking alimony, as well as their ability to meet all or part of their reasonable needs independently.").
[26] 13 *Del. C.* § 1512(c) provides that: "The alimony order shall be in such amount and for such time as the Court deems just, without regard to marital misconduct, after consideration of *all relevant factors*, including, but not limited to:
> (1) *The financial resources of the party seeking alimony, including the marital or separate property apportioned to him or her, and his or her ability to meet all or part of his or her reasonable needs independently*;
> (2) The time necessary and expense required to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment;
> (3) The standard of living established during the marriage;
> (4) The duration of the marriage;
> (5) The age, physical and emotional condition of both parties;
> (6) Any financial or other contribution made by either party to the education, training, vocational skills, career or earning capacity of the other party;
> (7) The ability of the other party to meet his or her needs while paying alimony;
> (8) Tax consequences;
> (9) Whether either party has foregone or postponed economic, education or other employment opportunities during the course of the marriage; and
> (10) Any other factor which the Court expressly finds is just and appropriate to consider."

11

seeking support has independent resources adequate to maintain his or her lifestyle can demonstrate the absence of a need for maintenance."[27]

Section 1512(c) does not define what "financial resources" are to be considered when determining dependency, beyond broadly stating that it includes "the marital or separate property apportioned to him or her." This includes an inheritance, which is defined as separate property under § 1513(b).[28] Nevertheless, the Family Court decided in this case that it would not require the Wife to dissipate the inheritance, and therefore it would not count the principal of the inheritance toward the Wife's financial resources. Instead, the Family Court only included the interest income from the inheritance toward the Wife's financial resources when calculating whether the Wife was dependent.[29] In doing so, the Family Court committed legal error by adding an exception to the statute that does not exist.

The fact that inheritances were carved out of the marital property subject to equitable division in § 1513(b) demonstrates that the General Assembly treats inheritances differently when it so desires. But the General Assembly did not craft any provisions that would remove certain assets from the "financial resources" that should be included when calculating alimony under § 1512. As other cases have recognized, Delaware courts may consider "both the principal and income of such inheritances under various provisions of § 1512(c) in fixing the amount of alimony" because § 1512(b)(2)

---

[27] RUTKIN at § 11.03(1)(a)(iii).
[28] 13 *Del. C.* § 1513(b) provides that: "For purposes of this chapter only, 'marital property' means all property acquired by either party subsequent to the marriage except:
 (1) Property acquired by an individual spouse by bequest, devise or descent or by gift . . . ."
[29] Family Court's Decision on Alimony (May 6, 2013).

and (c)(1) do not draw a distinction between principal and income.[30] Indeed, Delaware courts have included the full value of an inheritance when calculating whether a party is dependent and entitled to receive alimony.[31] Moreover, Delaware courts have not excluded the full value of an inheritance when calculating a party's ability to pay alimony.[32]

The relationship between the two provisions further illustrates that it is important not to extend the exception for inheritances contained in the provisions regarding distribution of marital property in § 1513 to the alimony calculations in § 1512. "Generally equitable distribution should be considered [before alimony]. It would be difficult to determine the needs of the recipient-spouse or child and the supporting spouse's ability to pay before a tentative equitable distribution award has been determined."[33] The $600,000 inheritance was not equitably distributed because it was not considered to be marital property subject to division under § 1513. In other words, the Husband already was not entitled to receive a 50/50 share of the inheritance equal to

---

[30] *In re Marriage of Tweedale v. Tweedale*, 1996 WL 861492 (Del. Fam. Ct. Dec. 17, 1996), *aff'd sub nom. Tweedale v. Tweedale*, 703 A.2d 645 (Del. 1997) (citing *Grant v. Grant*, File No. CN88-9362, Wakefield, J. (Del. Fam. Ct. Dec. 15, 1989)).

[31] *T.L. D. v. K.J.D.*, 2007 WL 4793914 (Del. Fam. Ct. June 27, 2007) (noting that the "Wife has liquid assets available to her to assist her with her monthly needs" that were partially from an inheritance, despite Wife's argument "that she should not have to use her inherited and premarital funds to pay for day-to-day living expenses"); *In re Marriage of Suloff*, 1996 WL 798763, at *2 (Del. Fam. Ct. Sept. 17, 1996) (where Wife used inheritance to purchase a sports car, the court noted that "[h]ad Wife . . . purchased a car for $11,000 (rather than one for almost $21,000), she would have $10,000 or approximately $278 per month over the three years during which she is eligible for alimony to (in part) meet her claimed expenses of $1,108 per month" and counted that $278 toward the wife's income when determining dependency).

[32] *D.E. v. D.E.*, 2012 WL 4857191, at *8 (Del. Fam. Ct. Aug. 17, 2012) (recognizing that an inheritance could be used to pay alimony obligations and including it in the analysis of whether a party could pay alimony under § 1512(b)(7)).

[33] ARNOLD H. RUTKIN, 3 FAMILY LAW AND PRACTICE § 38.06.

$300,000, or even a 60/40 share equal to $240,000 — money that the Husband could have used to pay alimony.   But for the Family Court to extend that exclusion of the inheritance through the alimony calculations performed under § 1512 would essentially apply the exclusion a second time, because that inheritance also would not be counted toward the Wife's financial resources, which she could use to support herself.

Moreover, when dependency is examined as a relative matter, the Wife appears to have sufficient property to meet her needs independent of alimony from the Husband. The Wife earns an annual income of $16,700 and the Family Court found that she had annual expenses of approximately $36,050.  A 50-year-old woman is expected to live for 33 years, or until age 83.[34]   If the Wife, who is currently age 50, withdrew $19,350 per year from her inheritance to make up the difference, the principal would last over 32.5 years, even if she earned no interest at all.  With interest included, even at only the 2.5 percent interest it is currently earning in a money market account, her inheritance would last even longer.  It would be inequitable to require the Husband to pay alimony to the Wife while those assets remain untouched.  This is particularly true where those alimony payments put the Husband in a situation where he can barely cover his own expenses.[35]

The statutory rationale for *considering* the full amount of the inheritance — not merely the interest income —in the dependency calculation is amplified by the record in this case, where the inheritance consists of liquid assets in a money market account.  If

---

[34] *Actuarial Life Expectancy Table*, SOCIAL SECURITY ADMINISTRATION, http://www.ssa.gov/OACT/STATS/table4c6.html (2009).
[35] Family Court's Decision on Alimony (May 6, 2013), (noting that "[a]n alimony award set at this amount leaves Husband with no excess income; however, it does not require Husband to suffer a monthly shortfall for his expenses").

the inheritance had been set up as a trust, under terms where the Wife was only to receive the interest income during her lifetime, then it would be logical not to include the principal in the dependency calculation, because the Wife would not be able to access it. But here, the Wife has ready access to over $629,000 in cash.

The Family Court improperly excluded *any consideration of the principal* of the inheritance from the Wife's financial resources. The complete exclusion of those substantial funds from the calculation of the Wife's dependency was contrary to the alimony statute and constituted an error of law. Therefore, this matter must be remanded to the Family Court for further proceedings in accordance with this Court's opinion. [36]

### Contempt Sanction

On April 30, 2012, the Family Court ordered the Husband to make interim alimony payments of $2,018 to the Wife. The Husband paid the full amount from May 2012 through July 2012. After that time, the Husband paid $1,000[37] in some months, but nothing for at least three months.[38] On August 23, 2012, the Wife filed a rule to show cause petition. The Family Court held a hearing on both the final distribution of marital assets and the rule to show cause petition on February 7, 2013. The Husband claimed that he could not afford to make the payments. But during his testimony, the Husband admitted he was living with and paying all of the expenses for his girlfriend, who had

---

[36] If the Family Court determines that the Wife is not dependent on the Husband on the basis of her substantial inheritance, then the interest rate earned on the inheritance is no longer a relevant issue in the case. The interest rate was only used to calculate the Wife's income for the purpose of determining her monthly shortfall, which was then used to calculate the amount of alimony the Husband would be required to pay.

[37] These months included August 2012, September 2012, November 2012, and January 2013.

[38] These months included October 2012, December 2012, and February 2013.

been out of work. These expenses included the mortgage, utilities, and the cost of five cats. The Family Court issued a final order on May 6, 2013, that found the Husband to be in contempt and determined that the Husband owed the wife $10,126 in total.

The Husband argues that he should not be held in contempt because he was not able to pay the full amount of the alimony payments. The Husband notes that the final alimony order determined that he was only able to pay $948 per month, or a total of $8,532. Because the Husband paid more than $8,532 in interim alimony, he argues that he was not in contempt of the order. The Husband also argues that the Family Court should have retroactively modified the interim alimony order to match the final alimony order, so that he would not be in contempt of the order.

This Court has explained that "[t]hree criteria must be met to support a finding of contempt: 1) there must exist a valid . . . order; 2) the [respondent] must have had the ability to abide by the valid . . . order; and, 3) the [respondent] must have, in fact, disobeyed the . . . order. . . . [The petitioner] must show a violation . . . by clear and convincing evidence."[39] In this case, it is undisputed that the Family Court entered an interim alimony order on April 30, 2012. It also is undisputed that the Husband failed to make sufficient alimony payments to the Wife as of the date of the hearing. Thus, the only question is whether the Husband had the ability to abide by the order. This Court

---

[39] *Sparks v. Matthews*, 2013 WL 6870007 at *1 (Del. Dec. 31, 2013) (quoting *Watson v. Givens*, 758 A.2d 510, 512 (Del. Fam. Ct. 1999) (citations omitted)).

16

has noted that "inability to pay may be a defense, but that the respondent has the burden of proving his inability to pay."[40]

Furthermore, the Husband's argument that the interim order was incorrect because the payments were too high is unavailing. "[T]he court will not listen to an excuse for the contemptuous action based upon an argument that the order in question was imperfect or erroneous."[41] In other words, the Husband cannot simply stop making payments because he thought that the payments were too much—especially where he stopped making payments before the Family Court made a final determination of the amount that would be due.

Rather, if he genuinely could not pay, the Husband should have informed the court of that, made an appropriate motion to modify, and paid as much as he was able. The Husband appears to have met part of this responsibility by moving to modify the interim order, but was unable to get that motion considered by the Family Court before the hearing on the final award itself.[42] The Husband also seems to have tried to pay what he

---

[40] *Id.*

[41] *Mayer v. Mayer*, 132 A.2d 617, 621 (Del. Ch. 1957) ("No person may with impunity disregard an order of the court having jurisdiction over the subject matter and of the parties.").

[42] In addition to filing a motion for reargument and an interlocutory appeal to the Supreme Court, both of which were denied, the Husband requested a hearing before the Family Court to reconsider the amount of alimony on June 12, 2012, during the period of time he was still paying the required amount. The Family Court scheduled a hearing for Sept. 5, 2012. But the Wife filed a motion to remove that hearing because a separate ancillary hearing had been scheduled to determine the final distribution of assets and final award of alimony on Dec. 11, 2012. The court granted the Wife's motion, noting that it would consider the Husband's request to retroactively modify the alimony order at the December hearing. The Wife then requested a continuance, which the court also granted. The Husband's motion to modify the alimony award was thus not considered until Feb. 7, 2013, when the ancillary hearing took place. By that point, the Husband had ceased to maintain his alimony obligations: he made payments of $1,000 in August, September, November, and January, but no payments in October, December, and February.

could for some time after arguing to the Family Court that he could not afford to pay the full amount the Family Court ordered as interim monthly alimony.

But rather than continue to pay what he could, the Husband failed to pay anything at all for three months.  Although a different judge might have concluded otherwise, the Family Court was within its discretion to conclude that this self-help was inconsistent with the Husband's responsibilities to honor a court order.  Accordingly, the Family Court properly exercised its discretion when it found that the Husband was in contempt of the interim alimony order, refused to retroactively modify the award, and required the Husband to pay the Wife the overdue payments.

The record reflects that the Family Court ordered the Husband to pay the $10,126 in interim alimony that was owed to the Wife.  The Husband argues that this sanction for civil contempt was an impermissible punitive fine.  This Court has explained that "whether a contempt is civil or criminal turns on the 'character and purpose' of the sanction involved."[43]  "[A] contempt is civil in character when 'instituted to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights and administer the remedies to which the court has found them to be entitled.'"[44]  Here, the sanction was not a fine but was the amount due to the Wife under the interim alimony order.  Contrary to the Husband's arguments, the

Although the court did modify the alimony award at the February hearing, it did not grant retroactive relief to the Husband.

[43] *DiSabatino v. Salicete*, 671 A.2d 1344, 1349 (Del. 1996) (*quoting United Mine Workers v. Bagwell*, 512 U.S. 821 (1994)).

[44] *City of Wilmington v. Gen. Teamsters Local Union 326*, 321 A.2d 123, 125 (Del. 1974); see also *DiSabatino*, 671 A.2d at 1350 (*quoting United Mine Workers v. Bagwell*, 512 U.S. 821 (1994) ("A fine is 'considered civil and remedial' if it either 'coerce[s] the defendant into compliance with the court's order, [or] ... compensate[s] the complainant for losses sustained.'").

sanction was not designed to "punish" him for his failure to pay, but rather, it was only intended to compel him to obey the order, make the payments, and bring the account current.

### *Attorney's Fees Award*

The Family Court ordered the Husband to pay the Wife's attorney's fees and costs associated with the April 30, 2012 interim alimony order.[45] The Husband argues that the Family Court abused its discretion when it ordered him to pay the Wife's legal fees because it did not properly consider the Wife's financial resources, including her substantial inheritance.

The Family Court has broad discretion in deciding whether to award attorney's fees and costs.[46] 13 *Del. C.* § 1515 provides:

> The Court from time to time *after considering the financial resources of both parties* may order a party to pay all or part of the cost to the other party of maintaining or defending any proceeding under this title and for attorneys' fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after the entry of judgment.[47]

The purpose of §1515 is "to provide a financially disadvantaged spouse with the financial resources to prosecute or defend a [divorce] action."[48] The Family Court will consider whether a party's excessively litigious conduct had an adverse financial effect on the

---

[45] Including the Wife's motion for temporary alimony, her response to the Husband's motion for reargument, her response to the Husband's motion to stay, her response to the Husband's application for certification of interlocutory appeal, and her petition for rule to show cause.

[46] *Julin v. Julin*, 787 A.2d 82, 84 (Del. 2001); *Wheeler v. Wheeler*, 636 A.2d 888, 892 (Del. 1993); *Lynam v. Gallagher*, 526 A.2d 878, 885 (Del. 1987); *Gray v. Gray*, 503 A.2d 198, 204 (Del. 1986).

[47] 13 *Del. C.* § 1515.

[48] *Mays v. Mays*, 1988 WL141148, at *2 (Del. Nov. 23, 1988) (citing *Gray*, 503 A.2d at 204).

other party.[49]  Family Court Civil Rule 88 also permits the Family Court to assess a party the reasonable counsel fees of any other party "where there is a legal or equitable basis therefor."[50]  An award of attorney's fees and costs "must not be made arbitrarily and must be supported by the evidence.[51]

In this case, the Family Court ordered the Husband "to pay Wife's counsel fees and court costs associated with Wife's requests for interim alimony and enforcement thereof."[52]  But in that same paragraph, the Family Court stated:  "[a]s to the balance of Wife's legal fees, she has substantial assets out of which she can pay those expenses."[53]  In *Mays*, this Court upheld an award of attorney's fees because the Family Court had determined that the "excessively litigious conduct" of one spouse had an "adverse financial effect" on the other.[54]  In this case, as in *Mays*, the Family Court looked to the litigious aspects of the Husband's conduct that led to the finding of contempt for failing to pay interim alimony[55] but determined that the Husband and Wife would pay their own attorney's fees for the remaining aspects of the litigation.[56]  This reasoning reflects that the Family Court properly exercised its discretion in awarding the Wife a *portion* of her attorney's fees and costs.

---

[49] *Id*.
[50] Fam. Ct. Civ. R. 88 ("In every case where there is a legal or equitable basis therefor the Court may assess a party the reasonable counsel fees of any other party.").
[51] *Lynam*, 526 A.2d at 885.
[52] Family Court's Decision on Alimony (May 6, 2013), B218 at *21.
[53] Family Court's Decision on Alimony (May 6, 2013), B218 at *21.
[54] *Mays v. Mays*, 1988 WL 141148, at *2 (Del. Nov. 23, 1988).
[55] *Id.*
[56] *Id.*

*Conclusion*

The judgment of the Family Court is affirmed, in part, and reversed, in part. This matter is remanded for further proceedings in accordance with this opinion.