IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| GAYLE GIRARDI,[1] | § | |
| | § | No. 251, 2022 |
| Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. CN16-01108 |
| JUSTIN OLSEN, | § | Petition No. 20-27433 |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |
| | § | |

Submitted: January 13, 2023
Decided: March 13, 2023

Before **SEITZ**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

## ORDER

After consideration of the opening brief and the record below, it appears to the Court that:

(1)     The respondent below-appellant, Gayle Girardi ("the Ex-Wife"), filed this appeal from the Family Court's order, dated June 23, 2022, resolving matters ancillary to her divorce from the petitioner below-appellee, Justin Olsen ("the Ex-Husband"). After careful consideration, this Court concludes that the Family Court's judgment should be affirmed.

---

[1] The Court previously assigned pseudonyms the parties under Supreme Court Rule 7(d).

(2)     The parties were married on August 23, 2003, separated on or about December 22, 2020, and divorced by final decree on August 23, 2021. The Family Court retained jurisdiction over property division, alimony, court costs, and counsel fees. The Family Court held a hearing on the ancillary matters on April 7, 2022. Both parties testified on their own behalf and called no other witnesses. The Ex-Wife sought 85% of the equity in the marital home (which was appraised at $550,000 and not subject to a mortgage) and 60% of the balance of the remaining marital assets and the reverse for debts. She also sought alimony. The Ex-Husband sought an equal division of all marital property and debts.

(3)     The parties' testimony primarily concerned the jointly titled marital home. The parties acquired the house for $456,007.20 less an $11,000 deposit on February 27, 2009. The Ex-Husband testified that $151,585.99 in proceeds from the sale of parties' previous home went toward the purchase price of their new home, with the remainder of the funds coming from the Ex-Wife's father. The sale of the previous home did not close until March 26, 2009.

(4)     The parties bought the previous home in 1996 before they were married. The Ex-Wife acquired the Ex-Husband's interest in the home after they broke up in 1998 and retitled and remortgaged the property solely in her name. Her name remained the only name on the title and mortgage, even after the Ex-Husband moved back into the house in 2001 and the parties married in 2003. As to the funds

2

provided by the Ex-Wife's father for the new home, the Ex-Husband testified that there was an agreement to repay him and that the parties repaid him $1,000.00 a month for at least three years until the Ex-Wife's father forgave the loan.

(5)     The Ex-Wife testified that her father provided all of the funds for the purchase of the marital home on February 27, 2009.  She provided evidence of three payments totaling $248,341.13 from her father to the Strata Law Firm on February 26, 2009, one cashier's check, dated February 26, 2009, payable to her and her father for $99,382.57, one cashier's check, dated February 26, 2009, payable to her brother and father for $94,674.88, and a cashier's check, dated February 26, 2009, payable to her father for $2,503.14.  According to the Ex-Wife, there was no agreement to repay her father and no money was repaid to him.  She testified that the parties lived off the proceeds from the sale of their previous home for several years.

(6)     On June 23, 2022, the Family Court issued its decision on ancillary matters ("June 23, 2022 Decision").  Applying 13 *Del. C.* § 1513, the court concluded that all non-retirement assets, including the house, should be apportioned 60% to Ex-Wife and 40% to the Ex-Husband with the reverse for debts.  As a result, the Ex-Wife owed the Ex-Husband $225,138.90.  If she did not pay this amount to the Ex-Husband within six months, she had to list the house for sale.  The court apportioned retirement assets equally between the parties.  Applying 13 *Del. C.* § 1512, the court held that Ex-Wife was dependent and ordered the Ex-Husband to

3

pay $334.00 a month in alimony, effective July 23, 2022 through August 23, 2030. The Ex-Husband had to pay an additional $49.90 a month in back alimony until he paid the full amount of back alimony owed. Finally, the Family Court held that the parties were responsible for their own attorneys' fees and costs. This appeal followed.

(7) The Ex-Wife challenges only the Family Court's division of the value of the marital home on appeal. She argues that the Family Court erred as a matter of law in its Section 1513 analysis. She also contends that the Family Court abused its discretion in failing to award her a greater percentage of the value of the marital home.

(8) On appeal from a Family Court decision on property division and alimony matters, this Court reviews the Family Court's factual and legal determinations, as well as its inferences and deductions.[2] We review conclusions of law *de novo*.[3] We will not disturb the Family Court's rulings on appeal if the court's findings of fact are supported by the record and its explanations, deductions, and inferences are the product of an orderly and logical reasoning process.[4] If the Family Court correctly applied the law, then our standard of review is abuse of discretion.[5]

[2] *Thorpe v. Gaines-Thorpe*, 2014 WL 2647366, at *1 (Del. June 11, 2014) (citing *Wife (J. F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del.1979)).
[3] *Forrester v. Forrester*, 953 A.2d 175, 179 (Del. 2008).
[4] *In re Heller*, 669 A.2d 25, 29 (Del. 1995).
[5] *CASA v. Dep't of Servs. for Children, Youth and Their Families*, 834 A.2d 63, 66 (Del. 2003).

(9)     In determining how to divide the parties' marital property, the Family Court considers all relevant factors, including the factors listed in Section 1513(a).[6] There is a presumption that property acquired by either party after marriage is marital property, but that presumption can be overcome if the property was acquired by one of several enumerated ways, including by gift if the gifted property is titled and maintained in the sole name of the donee spouse or a gift tax return is filed.[7] The Ex-Wife argues that the Family Court erred as a matter of law by applying Section 1513(b)(1)(a) and declining to consider Factor 9—whether the property was acquired by gift—in its Section 1513 analysis. We disagree.

(10)    In reviewing the evidence regarding the assets and debts in dispute, the Family Court recognized that the Ex-Wife sought "a significantly increased share of the value of [the marital home] because her father gifted her the funds used to purchase the home."[8] The Family Court next discussed the exclusion of certain

---

[6] These factors are: (i) the length of the marriage; (ii) any prior marriage of the party; (iii) the age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties; (iv) whether the property award is in lieu of or in addition to alimony; (v) each party's opportunity future acquisitions of capital assets and income; (vi) the contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker, husband, or wife; (vii) the value of the property set apart to each party (viii) economic circumstances of each party at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the party with whom any children of the marriage will live; (ix) whether the property was acquired by gift, except those gifts excluded by Section 1513(b)(1); (x) the debts of the parties; and (xi) tax consequences. 13 *Del. C.* § 1513(a).
[7] 13 *Del. C.* §§ 1513(b)(1)(a) and (c).
[8] June 23, 2022 Decision at 3.

gifted property under Section 1513(b)(1) (a) from the definition of marital property. In the context of this discussion, the Family Court found that the funds from the Ex-Wife's father for the purchase of the house did "not meet the definition of gift" to the Ex-Wife.[9] The Ex-Wife does not dispute that the house was marital property subject to property division.

(11) The Family Court also considered the proceeds from the sale of the parties' previous home, finding that there was no evidence that the proceeds were used for the purchase or upkeep of the new home. After emphasizing that the Ex-Husband was the sole financial support for the family from 2006 through 2021, the Family Court concluded it would not be equitable to give the Ex-Wife a significantly disproportionate share of the marital home.

(12) Having reviewed the assets and debts in dispute, the Family Court next considered the Section 1513(a) factors, including whether the property was acquired by gift under Factor 9. As to Factor 9, the Family Court summarized the parties' conflicting testimony and found that "[a]s set forth in greater detail above, the Court does not deem [the marital home] to be more [the Ex-Wife's] property than [the Ex-Husband's] based upon any possible gift of funds from [the Ex-Wife's] father toward its purchase price."[10] The Family Court did not, as the Ex-Wife contends, decline to

---

[9] *Id.*
[10] *Id.*

consider Factor 9 based on its application of Section 1513(b)(1)(a). Rather, the Family Court considered Factor 9 and concluded that any possible gift of funds from the Ex-Wife's father for the purchase of the marital home did not weigh in favor of awarding her a significantly greater percentage of the value of the house. The Family Court thus did not err as matter of law in applying Section 1513(a).

(13) The Ex-Wife next argues that the Family Court abused its discretion in failing to award her a greater percentage of the marital home based on Factors 6 (the contribution or dissipation of each party in the acquisition, preservation, of marital property) and Factor 9. The Family Court concluded that Factors 1 (length of the marriage), 3 (the age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties), 6, and 8 (the economic circumstances of the parties at the time of property division) weighed in favor of awarding the Ex-Wife 60% of the non-retirement assets, which included the marital home. As previously discussed, the Family Court did not disregard Factor 9, but instead found that Factor 9 did not weigh in favor of awarding significantly more of the marital home value to the Ex-Wife.

(14) The Family Court "has broad discretion in fixing the percent of the marital assets to award to each spouse" under Section 1513.[11] Weighing of the

---

[11] *Mays v. Mays*, 1988 WL 141148, at *2 (Del. Nov. 23, 1988).

Section 1513 factors "is uniquely within the province of the Family Court."[12] The record reflects that the Family Court carefully weighed the evidence and concluded, based on the factors set forth in Section 1513, that the Ex-Wife was entitled to a larger, but not disproportionately larger, share of the marital home value. The Family Court did not abuse its discretion in declining to award the Ex-Wife more than 60% of the marital home.[13]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice

---

[12] *Glanden v. Quirk*, 128 A.3d 994, 1002 (Del. 2015).

[13] *Cf. Thomas v. Thomas*, 102 A.3d 1138, 1144-45 (Del. 2014) (affirming the Family Court making a "moderate adjustment" in favor of the wife by awarding her 60% of the marital property where the marital residence was the parties' principal asset, the husband earned more, and the marital residence was a gift from the wife's parents, motivated by their desire to help the wife spend more time with their grandchildren and live in better circumstances); *L.M. v. R.M.*, 2007 WL 3202334, *8 (Del. Fam. Ct. Aug. 3, 2007) (stating that the wife's father providing a mortgage for the marital home and forgiving the principal of the mortgage was a major reason for the court awarding 57% of the home to the wife).