# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| PURVI GANDHI-KAPOOR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 2022-0881-JTL |
| | ) | |
| HONE CAPITAL LLC AND CSC UPSHOT | ) | |
| VENTURES I, L.P., | ) | |
| | ) | |
| Respondents. | ) | |

## OPINION HOLDING RESPONDENTS IN CONTEMPT

Date Submitted: May 26, 2023
Date Decided: July 19, 2023

Evan O. Williford, THE WILLIFORD FIRM LLC, Wilmington, Delaware; Ellen A. Cirangle, LUBIN OLSON & NIEWIADOMSKI LLP, San Francisco, California; *Attorneys for Petitioner Purvi Gandhi-Kapoor.*

Ryan M. Ernst, David M. Klauder, Melissa M. Hartlipp, BIELLI & KLAUDER, LLC, Wilmington, Delaware; *Attorneys for Respondents Hone Capital LLC and CSC Upshot Ventures I, L.P.*

**LASTER, V.C.**

Petitioner Purvi Gandhi-Kapoor asks the court to hold respondents Hone Capital LLC ("Hone") and CSC Upshot Ventures I, L.P. (the "Upshot Fund," and together with Hone, the "Companies") in contempt for failing to comply with an order to advance expenses (the "Advancement Order").[1] The Companies contend that sanctions should not be imposed because the petitioner does not face irreparable harm.

A threshold question exists about whether contempt sanctions can be used to enforce the Advancement Order. Contempt is not generally available to enforce a money judgment. Instead, the holder of the judgment must resort to collection mechanisms. The Advancement Order, however, is more than a money judgment. The right to advancement is a time-sensitive remedy designed to permit a covered person to defend underlying litigation. A lack of timely advancements prejudices the covered person's ability to defend the underlying litigation, potentially resulting in irremediable consequences, such as an

---

[1] This decision uses the term "expenses" to refer collectively both to attorneys' fees and amounts paid out of pocket that might more colloquially be called expenses. That is how Section 145 of the Delaware General Corporation Law (the "GCL") deploys the term. *See, e.g.*, 8 *Del. C.* § 145(a) (authorizing a corporation in a proceeding other than one brought by or in the right of the corporation to provide indemnification "against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred"); *id.* § 145(b) (authorizing a corporation in a proceeding brought by or in the right of the corporation to provide indemnification "against expenses including attorneys' fees) actually and reasonably incurred"); *id.* § 145(c) (mandating that corporation indemnify a director or officer who was successful on the merits or otherwise in defending a proceeding "against expenses (including attorneys' fees) actually and reasonably incurred"). The out-of-pocket expenses encompassed by Section 145 are broader than the restricted concept of "costs" in the statute that authorizes the recovery of court costs in the Court of Chancery. *See* 10 *Del. C.* § 5106; *Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Est. Fund*, 68 A.3d 665, 686–88 (Del. 2013).

adverse judgment or a conviction. An award of interest—the typical remedy for a delayed payment—cannot compensate for those consequences. And while those consequences are contingent, the present danger is real, because the risk of an adverse outcome increases as advancements go unpaid.

Because of the harm that a covered person faces, the holder of an advancement right is not relegated to collection mechanisms. The court could deploy coercive equitable remedies to enforce the advancement right. By the same token, the court can deploy coercive contempt sanctions.

This decision imposes coercive relief in the form of a daily fine. The Companies will have one week from the date of this decision to comply with the Advancement Order. After that, for each day of non-compliance, the amount due will increase by $1,000. If that coercive sanction proves insufficient to compel compliance, then Gandhi may seek further relief. In addition, the Companies must bear all of the expenses that Gandhi incurred pursuing her motion for contempt.

## I.  FACTUAL BACKGROUND

The facts are drawn from the parties' submissions in connection with the motion for contempt and from prior filings in the case.

## A.  Litigation Against Gandhi

The Companies are indirect subsidiaries of China Science & Merchants Investment Management Group Co. Ltd. ("CSC Group"), a private equity fund. The Upshot Fund invests in technology companies. Hone is the general partner of the Upshot Fund.

2

Gandhi is a member of Hone, served as its CFO, and had the title of Partner. At Hone, she reported to Bixuan Wu. Through their roles at Hone, Gandhi and Wu managed the Upshot Fund. Their compensation included a profit interest based on the performance of the Upshot Fund.

For disputed reasons, the CSC Group terminated Wu and Gandhi. In 2020, the CSC Group caused Hone to file a lawsuit against Gandhi in California Superior Court. The complaint asserts that Gandhi breached her fiduciary duties and engaged in fraud. Hone's claims revolve around the management of the Upshot Fund. Among other things, Hone seeks a declaratory judgment that Gandhi is not entitled to her profit interest.

Gandhi and Wu responded by filing a lawsuit in which they sought to enforce their right to a profit interest. Hone filed counterclaims and raised defenses in that lawsuit based on the same theories that Hone had asserted its own case.

Hone moved to consolidate the two lawsuits. The California Superior Court granted the motion, resulting in a single consolidated action (the "Consolidated Action").

Gandhi has incurred significant expenses defending the claims and pursuing her counterclaims in the Consolidated Action. As of August 2022, Gandhi's expenses totaled $581,744. She represented that approximately $436,308, or 75%, of those expenses are attributable to defending the claims against her.

## B.     The Advancement Order

On September 29, 2022, Gandhi sent a written demand to the Companies asking them to advance her expenses. The next day, Gandhi filed this action to enforce her right to advancement.

3

On November 1, 2022, the court entered a stipulated order which established that Gandhi was entitled to (i) advancement of expenses reasonably incurred in defending the claims and counterclaims in the Consolidated Action and (ii) indemnification of expenses reasonably incurred in seeking advancement from Hone. On November 15, the court entered two stipulated orders establishing procedures by which Gandhi would submit her expenses to Hone, one for her initial demand and one for future demands.

The case took a sideways turn on November 23, 2022, when Hone moved to vacate the stipulated orders. Hone contended that its Delaware counsel mistakenly believed that Hone had authorized them when, in reality, Hone had not. The parties briefed the motion to vacate. Gandhi separately moved for summary judgment establishing her advancement rights.

On April 5, 2023, the court granted Gandhi's motion for summary judgment and entered the Advancement Order. The court held that Gandhi is entitled to advancement from both Hone and the Upshot Fund for the claims in the Consolidated Action. The court also awarded pre- and post-judgment interest, compounded quarterly at the legal rate, on any unpaid advancements, calculated from the date when Gandhi first specified the amount of reimbursement demanded. The court also held that Gandhi was entitled to indemnification for the fees she incurred obtaining the Advancement Order.

In addition to ruling on Gandhi's rights to advancement and indemnification, the court held that the entry of an advancement procedures order was warranted to govern future demands for advancement. Noting that the parties had already submitted such an order, which the court had approved, the court validated that order *nunc pro tunc*.

4

**C. The Companies Fail To Comply With The Advancement Order.**

When the court entered the Advancement Order, Gandhi had submitted a written demand for advancement to Hone on November 23, 2022, for $436,308 in advancements. Hone was obligated to pay any amounts to which it did not object to by December 17. Hone did not object to any amounts and did not make any payments.

Beginning in December 2022, Gandhi submitted monthly advancement demands to Hone. Hone was obligated to pay any amounts to which it did not object by a designated date. Hone did not object to any amounts and did not make any payments.

After this court entered the Advancement Order, Gandhi sent a written demand for advancements to the Upshot Fund on April 16, 2023. The Upshot Fund was obligated to pay any amounts to which it did not object by May 11. The Upshot Fund did not object to any amounts and did not make any payments.

As of May 11, 2023, Gandhi had demanded and was entitled to advancements in the amount of $946,445.16 from Hone and $849,264.76 from the Upshot Fund. Those amounts covered many of the same expenses, and thus Hone and the Upshot Fund were jointly and severally liable for overlapping amounts. Neither Hone nor the Upshot Fund has objected to any amounts or made any payments.

## II. LEGAL ANALYSIS

Court of Chancery Rule 70(b) authorizes the court to hold a party in contempt who "fail[s] to obey a restraining or injunctive order, or to obey or to perform any order." Ct. Ch. R. 70(b). Gandhi has moved to hold the Companies in civil contempt for failing to comply with the Advancement Order. Gandhi asks the court to (i) appoint a limited purpose

5

receiver for the Companies that will cause them to pay the amounts due, (ii) impose a coercive fine of $10,000 per day on each Company until they comply, and (iii) award Gandhi the fees and expenses incurred in pursuing contempt.

## A. What Remedies Are Available To Enforce The Advancement Order?

A threshold question exists about what remedies are available to enforce the Advancement Order. In one sense, the Advancement Order merely entitles Gandhi to receive money. Generally speaking, when a party has obtained a money judgment, the party must resort to collection procedures by garnishing wages, levying on a bank account, or taking possession of and selling assets at a sheriff's sale. A court will not intervene to deploy coercive remedies on the claimant's behalf.

There are, however, recognized exceptions to that rule. One involves a court's ability to enforce an interim order entered in advance of a final judgment. More generally, a court of equity has the ability to deploy remedies where a monetary judgment would be inadequate.

### 1. The General Rule

As a general rule, a party that holds a money judgment must resort to collection mechanisms. Chancellor Allen addressed the issue when ruling on an application to enforce a final order directing payment of the plaintiff's legal fees in the amount of $3,974.75. *Vanderzeyde v. RDIS Corp.*, 1996 WL 33167791, at *1 (Del. Ch. June 6, 1996). The defendant had failed to comply for over seven months, and the plaintiff sought to hold the defendant in contempt. Chancellor Allen denied the motion with the following explanation:

6

> While I find it deplorable that defendant RDIS, Inc. has apparently failed to meet its obligations as established by the October order (no appeal was filed), I do not think that contempt of court is the appropriate remedy for failure to satisfy a judgement for money. The law supplies execution process for this purpose. For practical as well as theoretical reasons that is the appropriate way, in my opinion, for this matter to be resolved.

*Id.* The plaintiff had obtained a final judgment that provided for monetary relief, and the plaintiff needed to use the collection mechanisms that the law supplied.

Vice Chancellor Montgomery-Reeves, now serving on the United States Court of Appeals for the Third Circuit, reasoned similarly in two decisions. *See Trascent Mgmt. Consulting, LLC v. Bouri*, 2018 WL 6338996 (Del. Ch. Dec. 4, 2018); *In re Mobilactive Media, LLC*, 2018 WL 5046282 (Del. Ch. June 28, 2018). In *Mobilactive*, the plaintiffs had obtained final judgments awarding them amounts due under certain indemnification agreements. The defendants failed to satisfy the judgments, and the plaintiffs moved to hold the defendants in contempt. The Vice Chancellor denied the application, reasoning that ordinary collection mechanisms were sufficient. *Id.* at \*3.

Vice Chancellor Montgomery-Reeves reached the same conclusion in *Trascent*, where a party had obtained a money judgment as part of a sanctions ruling issued at the end of the case. 2018 WL 6338996, at \*2. The plaintiff attempted to depict the sanctions ruling as an interim award that required enforcement through contempt, but the Vice Chancellor rejected that argument: "The sanctions were issued as part of the post-trial final resolution of the case. The post-trial opinion and implementing order resolved all outstanding issues in this case. Plaintiff's latest flurry of filings does not change that fact."

7

*Id.* She held that the plaintiff would have to enforce its judgment through collection mechanisms.

### 2. Interim Awards

Collection mechanisms are the presumptive means of enforcing an order providing for the payment of money, but they are not exclusive. One situation when a court can deploy other remedies involves an interim award. The Delaware Supreme Court addressed the issue in the context of an interim award of alimony. *Thomas v. Thomas*, 102 A.3d 1138, 1148 (Del. 2014). The husband fell behind in his payments of $2,018 per month, and the wife sought to enforce his obligation to pay a total of $10,126. The Delaware Family Court held that the husband was in contempt, directed him to pay the full amount due, and granted the wife a partial award of attorneys' fees. The Delaware Family Court did not relegate the wife to collection mechanisms. In the appeal from the eventual final order, the husband challenged the contempt sanction. The Delaware Supreme Court held that the Delaware Family Court acted properly by using contempt "to compel him to obey the order, make the payments, and bring the account current." *Id.* at 1150. The high court also affirmed the partial fee award. *Id.* at 1151; *accord McMillion v. McMillion*, 852 A.2d 908, 2004 WL 153801, at *1 (Del. 2004) (ORDER) (affirming ruling holding wife in contempt for failing to pay alimony and awarding amount due plus attorneys' fees).

The routine oversight of litigation often involves the issuance of interim monetary awards, many of which are fee awards. "A trial court may grant interim fees for a variety of reasons, including as a consequence for discovery abuse, as a sanction for making frivolous legal arguments or engaging in bad-faith litigation tactics, as a remedy for

8

contempt of an interlocutory court order, or under specific statutory authority." *In re Del Monte Foods Co. S'holders Litig.*, 2011 WL 2535256, at \*6 (Del. Ch. June 27, 2011); *accord Kurz v. Holbrook*, 2010 WL 3028003, at \*1 (Del. Ch. July 29, 2010) (citing authorities). A contract provision also may support an interim fee award. *Sparton Corp. v. O'Neil*, 2018 WL 3025470, at \*5 (Del. Ch. June 18, 2018).

Rule 37 is one source of interim fee awards. That rule states that if a discovery motion is granted, or if the discovery requested is provided after the motion was filed, then

> the Court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including the attorney's fees, unless the Court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

Ct. Ch. R. 37(a)(4)(A). Violations of court orders also can lead to interim awards, because "[w]hen a party violates orders of the court—including scheduling orders that require the parties to file papers and make all their arguments at the required time—and rules of the court, and thereby exposes its adversary to unnecessary delay and expense, this court has the discretion to shift fees." *Wimbledon Fund LP–Absolute Return Fund Series v. SV Special Situations Fund LP*, 2011 WL 6820362, at \*3 (Del. Ch. Dec. 22, 2011).

By their nature, interim fee awards must be paid before the end of the action, otherwise they lose much of their effect. Fee awards of this type are made to coerce compliance, to compensate the injured party, and to deter similar conduct in the future. *See In re Rinehardt,* 57 A.2d 1079, 1082 (Del. 1990); *Holt v. Holt*, 472 A.2d 820, 824 (Del. 1984); *see also Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 99 (D.N.J. 2006) ("[Rule 37's]

9

purposes are to: (1) penalize the culpable party or attorney; (2) deter others from engaging in similar conduct; (3) compensate the court and other parties for the expense caused by the abusive conduct; and (4) compel discovery and disclosure."). Contempt sanctions provide the mechanism for mid-case enforcement of interim awards.

The alternative is unpalatable. If contempt sanctions were unavailable, then the only solution would be for the court to enter the award as a partial final judgment under Rule 54(b). At that point, a party could pursue traditional enforcement mechanisms, but the party obligated to pay the award also could appeal the award as a matter of right. The result would be a flurry of appeals to the Delaware Supreme Court, often involving relatively minor amounts. The Delaware Supreme Court has made clear that piecemeal appeals are to be avoided. *See* Supr. Ct. R. 42. An interim sanctions order will rarely meet the requirements for an interlocutory appeal under Supreme Court Rule 42, and the Delaware Supreme Court has also rejected efforts to appeal mid-case monetary sanctions under the collateral doctrine. *See TransPerfect Glob., Inc. v. Pincus*, 224 A.3d 203, 2019 WL 7369433, at *3 (Del. Dec. 31, 2019) (ORDER). Severing and entering mid-case awards of interim attorneys' fees as Rule 54(b) orders would upset the final order doctrine. Instead, courts can use their contempt power to enforce interim monetary awards.

### 3. When Collection Mechanisms Would Be Inadequate

A more general scenario where other remedies are available involves situations where relegating a party to collection mechanisms would be inadequate. The analysis here resembles the process that the Court of Chancery follows when determining whether a

10

money judgment will provide an adequate remedy or whether some form of equitable relief is necessary.

One familiar scenario involves a defendant who intends to transfer money or other assets outside of the court's jurisdiction and thereby render a monetary judgment ineffective. *See Mitsubishi Power Sys. Am., Inc. v. Babcock & Brown Infrastructure Gp. US, LLC*, 2009 WL 1199588, at \*4 (Del. Ch. Apr. 24, 2009). The Delaware Fraudulent Transfer Act recognizes that threat and authorizes injunctive relief to stop a fraudulent transfer. *See* 6 *Del. C.* § 1307(a). The threat exists because a judgment against an insolvent defendant is worthless, and an award of interest that will never be received cannot provide compensation for an infinite delay in payment. Thus, provisional relief can be granted when there exists "[a] meaningful threat that a defendant may render relief meaningless by dissipating assets or removing them from the court's jurisdiction." *Destra Targeted Income Unit Inv. Tr. v. Parmar*, 2017 WL 373207, at \*2 (Del. Ch. Jan. 25, 2017) (granting preliminary injunction to prevent "defendants and parties acting in concert with them from distributing cash and other securities that they will receive in connection with the transactions governed by" a merger agreement alleged to be a fraudulent conveyance).

A second scenario involves a declaratory judgment that establishes a right to payment of a designated sum of money. *See Epic/Freedom, LLC v. Aveanna Healthcare LLC*, 2021 WL 1049469 (Del. Ch. Mar. 19, 2021). In *Epic/Freedom*, a contract obligated the defendant to pay over a tax refund to the plaintiff, and the plaintiff filed suit in the Court of Chancery seeking a decree of specific performance. The defendant contended that the Court of Chancery lacked subject matter jurisdiction over what was effectively a claim for

11

money damages. The plaintiff disagreed, noting that the defendant was obligated to turn over the refund within ten days of receipt and contending that only a decree of specific performance could enforce that requirement. Vice Chancellor Slights held that the Delaware Superior Court could both (i) declare the existence of a right to the tax refund and (ii) enforce the declaratory judgment through the exercise of its contempt powers. *Id.* at \*4. He therefore dismissed the Chancery action for lack of jurisdiction.

The *Epic/Freedom* case involved a situation where an attempt to resort to collection mechanisms likely would be inadequate, but equitable remedies were not needed. After a favorable decision from the Delaware Superior Court, the plaintiff would have a declaratory judgment establishing its right to a tax refund, not a monetary judgment for a liquidated amount. Collection mechanisms could not be used in that setting, but contempt sanctions would enable a court of law to enforce its order without needing to send the dispute back to the Court of Chancery. The case shows that in some settings, contempt functions as a substitute for equitable relief.

### 4. The Answer For Advancements

The overarching theme that unites these precedents is the question of whether collection mechanisms are adequate. If a party can obtain full relief by levying on a bank account, garnishing wages, or having the sheriff sell assets, then the party should be relegated to those remedies. But if something about the obligation to pay money would render the collection mechanisms inadequate, then a court can act.

In an ongoing advancement proceeding, resort to collection mechanisms is inadequate. "Rights to indemnification and advancement are deeply rooted in the public

12

policy of Delaware corporate law in that they are viewed less as an individual benefit arising from a person's employment and more as a desirable mechanism to manage risk in return for greater corporate benefits." *Kaung v. Cole Nat. Corp.*, 884 A.2d 500, 509 (Del. 2005). Delaware law authorizes these mechanisms to "promote the desirable end that corporate officials will resist what they consider unjustified suits and claims, secure in the knowledge that their reasonable expenses will be borne by the [entity] they have served if they are vindicated." *Stifel Financial Corp. v. Cochran*, 809 A.2d 555, 561 (Del. 2002) (cleaned up).

Advancement is a summary proceeding distinct from indemnification. *Kaung*, 884 A.2d at 509. "Advancement provides corporate officials with *immediate interim relief* from the personal out-of-pocket financial burden of paying the significant on-going expenses inevitably involved with investigations and legal proceedings." *Homestore, Inc. v. Tafeen (Tafeen III)*, 888 A.2d 204, 211 (Del. 2005). The proceeding is summary because "immediate interim relief" must be provided in timely fashion to be effective:

> [T]he immediate advancement of fees fulfills a real and legitimate need of those who serve as directors and officers of Delaware corporations when faced with significant costs of defending legal actions against them. Clearly, to be of any value to the executive or director, advancement must be made promptly, otherwise its benefit is forever lost because the failure to advance fees affects the counsel the director may choose and litigation strategy that the executive or director will be able to afford.

*Tafeen v. Homestore, Inc. (Tafeen I)*, 2005 WL 1314782, at *3 (Del. Ch. May 26, 2005), *aff'd*, 886 A.2d 502 (Del. 2005).

The need for timely relief in an advancement proceeding counsels against relegating the holder of an advancement right to collection mechanisms. A covered person would

13

have to secure a ruling entering the advancement order as a partial final judgment, deal with any appeal, transfer the order to the Delaware Superior Court, conduct remedial discovery to locate assets, take steps to domesticate the judgment in a foreign jurisdiction if the assets were located elsewhere, then obtain the writs necessary to levy on the assets. Any non-cash assets would have to be converted into cash through a sheriff's sale. Only then would the covered person receive the funds that the advancement right was supposed to deliver in the form of "immediate interim relief." *Tafeen III*, 888 A.2d at 211.

The advancement award is also an interim monetary award, akin to an interim award of alimony or an interim fee award. An advancement proceeding often involves a series of disputes over monthly or quarterly submissions. In that setting, enforcement through contempt is warranted, because each adjudication is interlocutory. *See Kroenke Sports & Ent., LLC v. Salomon*, 228 A.3d 409, 2020 WL 1951679, at *2 (Del. Apr. 23, 2020) (ORDER). Precisely because an advancement order is an interim order and not yet final, the court must use other methods to enforce the order.[2]

Finally, resort to contempt authority is warranted because the covered person faces a threat of irreparable harm. A right to advancement enables a covered person to defend an

---

[2] As noted, a court can certify a ruling on a particular amount of advancements as a partial final judgment under Rule 54(b), but doing so risks fracturing a single advancement case into a series of separately appealable rulings. *Sider v. Hertz Glob. Hldgs, Inc.*, 2019 WL 2501481, at *3 (Del. Ch. June 17, 2019). This court has explained that absent exceptional circumstances, a ruling on a particular amount of advancements should not be certified under Rule 54(b). Rather, any appeal as of right should await the conclusion of the advancement action. The advancing party can also protect itself by seeking to recover improperly advanced amounts when determining the right to ultimate indemnification. *Id.*

14

underlying proceeding. Without advancement, a covered person could be convicted or held liable, potentially resulting in "a harm that could never be undone" and an outcome disproportionate to what an award of money damages plus interest could remedy. *Tafeen I*, 2005 WL 1314782, at *2. Recognizing that the denial of an advancements can result in irreparable harm, this court has declined to stay a ruling establishing advancement rights pending appeal. *Id.* In a case where the company could not point to any countervailing equity other than the financial burden of compliance, the Delaware Supreme Court affirmed the denial of a stay pending appeal. *Homestore, Inc. v. Tafeen*, 886 A.2d 502, 506 (Del. 2005). The same reasoning supports using contempt authority to ensure that advancements are paid promptly.

Unlike in a typical case involving the payment of money, a court can use coercive remedies to enforce a declaration regarding advancements and an obligation to pay specific amounts. Delaware entities are not required to provide advancement rights, but if an entity choses to do so, a court can enforce those commitments. The holder of the advancement right is not relegated to collection mechanisms.

**B.      Are The Companies In Contempt?**

Having concluded that the Advancement Order can be enforced by contempt, the next task is to determine whether the Companies are in contempt. "To establish civil contempt, [the movant] must demonstrate that the [opponent] violated an order of the court of which they had notice and by which they were bound." *Handels AG v. Johnston*, 1997 WL 589030, at *3 (Del. Ch. Sept. 17, 1997). "The standard of proof required in a civil contempt proceeding is a preponderance of the evidence." *In re Hurley*, 257 A.3d 1012,

15

1018 (Del. 2021); *accord TransPerfect Glob., Inc. v. Pincus*, 278 A.3d 630, 649 (Del. 2022).

A trial court has discretion when determining whether to hold a party in contempt. *Dickerson v. Castle*, 1991 WL 208467, at *3 (Del. Ch. Oct. 15, 1991). The violation "must not be a mere technical one, but must constitute a failure to obey the Court in a meaningful way." *Id.* at *4 (cleaned up). "Even where there has been a violation, the Court will consider good faith efforts to comply with the order or to remedy the consequences of non-compliance." *Aveta, Inc. v. Bengoa*, 986 A.2d 1166, 1181 (Del. Ch.2009).

The Companies failed to comply with the Advancement Order. The Companies knew about the orders and were bound by them. After the court entered the Advancement Order, the Companies could no longer have any doubt about their obligation to provide Gandhi with advancements. The Companies did not comply. In response to Gandhi's motion, they make no effort to contend that they have complied or to otherwise defend their non-compliance. The Companies are therefore in contempt.

## C.     What Is The Appropriate Remedy?

The court has broad discretion when formulating a remedy for contempt. *Jagodzinski v. Silicon Valley Innovation Co., LLC*, 2012 WL 593613, at *2 (Del. Ch. Feb. 14, 2012); *Israel Disc. Bank of N.Y. v. First State Depository Co. LLC*, 2012 WL 1021180, at *3 (Del. Ch. Mar. 19, 2012). Remedies can take the form of civil or criminal sanctions. *DiSabatino v. Salicete*, 671 A.2d 1344, 1348 (Del. 1996). If the primary purpose of the remedy is to coerce compliance with the court's order, then the remedy is civil in character. *City of Wilmington v. Gen. Teamsters Loc. Union 326,* 321 A.2d 123, 125 (Del. 1974). If

16

the primary purpose of the remedy is to punish for non-compliance, then the remedy is criminal in character. *Id.*

When selecting a contempt sanction or combination of sanctions, "a court is obligated to use the least possible power adequate to the end proposed." *TR Invs., LLC v. Genger*, 2009 WL 4696062, at *18 n.74 (Del. Ch. Dec. 9, 2009) (quoting Am. Jur. 2d *Contempt* § 195). The sanctions imposed should be "just and reasonable." *Gallagher v. Long*, 940 A.2d 945, 2007 WL 3262150, at *2 (Del. 2007).

### 1.    A Limited-Purpose Receiver

Gandhi asks that the court appoint a limited purpose receiver for both Companies with authority to cause them to satisfy their advancement obligations. The Companies respond that the case law on which Gandhi relies pertains to corporations, not to alternative entities like the Companies. That is a meaningless distinction.

The power to appoint a receiver rests in "the general equity powers of the court sitting as a court of chancery." *Carson v. Allegany Window Glass Co.*, 189 F. 791, 795 (C.C.D. Del. 1911); *accord Brill v. Southerland*, 14 A.2d 408, 413 (Del. 1940); *Ross Hldg. & Mgmt. Co. v. Advance Realty Gp., LLC*, 2010 WL 3448227, at *6 (Del. Ch. Sept. 2, 2010). Article IV, Section 10 of the Delaware Constitution provides that this court "shall have all the jurisdiction and powers vested by the laws of this State in the Court of Chancery." Del. Const. art. IV, § 10. The Delaware Supreme Court has held that this provision vested in the Court of Chancery "all the general equity jurisdiction of the High Court of Chancery of Great Britain as it existed prior to the separation of the colonies," except "where a sufficient remedy exists at law." *DuPont v. DuPont*, 85 A.2d 724, 727

17

(Del.1951). In light of this provision, the high court held that the General Assembly cannot enact legislation that reduces this court's jurisdiction below the constitutionally established minimum, unless there is an adequate remedy at law. *Id.* at 729. The Delaware Supreme Court explained that Article IV, Section 10 was

> intended to establish for the benefit of the people of the state a tribunal to administer the remedies and principles of equity. They secured them for the relief of the people. This conclusion is in complete harmony with the underlying theory of written constitutions. Its result is to establish by the Judiciary Article of the Constitution the irreducible minimum of the judiciary. It secures for the protection of the people an adequate judicial system and removes it from the vagaries of legislative whim.

*Id.* This broad grant of jurisdiction necessarily includes the power to appoint receivers for entities. *See, e.g.*, 4 John Norton Pomeroy, *Equity Jurisprudence* § 1333(1) (Spencer W. Symons ed., 5th ed. 1941).

As the GCL illustrates, there are statutes which confirm the court's authority to appoint a receiver in particular settings. *E.g.*, 8 *Del. C.* §§ 226, 291, 352. Those statutes supplement the court's inherent authority, which exists independently. *Cf.* Ct. Ch. R. 148 (listing rules applicable to cases in which receivers are appointed "whether such receivers or trustees are appointed pursuant to a statute . . . or pursuant to the inherent authority of the Court").

As part of its inherent authority, a court can appoint a receiver to effect compliance with its orders. *E.g.*, *Rich v. Fuqi Int'l Inc.*, 2013 WL 2500815, at *2 (Del. Ch. June 12, 2013). Section 322 of the GCL makes that authority express by providing as follows: "Whenever any corporation shall refuse, fail or neglect to obey any order or decree of any court of this State within the time fixed by the court for its observance, such refusal, failure

18

or neglect shall be sufficient ground for the appointment of a receiver of the corporation by the Court of Chancery." 8 *Del. C.* § 322. The powers that can be granted to and exercised by a receiver appointed under Section 322 are co-extensive with those powers that can be granted to and exercised by a receiver appointed under Section 291. *See Esopus Creek Value LP v. Hauf*, 913 A.2d 593, 606–07 (Del. Ch. 2006). Such a receiver may be appointed

> to take charge of [the corporation's] assets, estate, effects, business and affairs, and to collect the outstanding debts, claims, and property due and belonging to the corporation, with power to prosecute and defend, in the name of the corporation or otherwise, all claims or suits, to appoint an agent or agents under them, and to do all other acts which might be done by the corporation and which may be necessary or proper. The powers of the receivers shall be such and shall continue so long as the Court shall deem necessary.

8 *Del. C.* § 291.

Like the GCL, the Delaware Limited Liability Company Act (the "LLC Act") provides explicitly for the appointment of a receiver when a limited liability company is insolvent, has dissolved, or has had its certificate of formation canceled. *See* 6 *Del. C.* § 18-112, 18-804, 18-805. As in the corporate realm, those explicit grants of authority do not occupy the field. The LLC Act provides that "[i]n any case not provided for in this chapter, the rules of law and equity, including the rules of law and equity relating to fiduciary duties and the law merchant, shall govern." *Id.* § 18-1104. The court "has the inherent equitable power to appoint a receiver," including for an LLC. *Jagodzinski*, 2012 WL 593613, at *2; *accord Bruckel v. Tauc Hlgs., LLC*, C.A. No. 2021-0579-MTZ, at 21 (Del. Ch. July 17, 2023) (discussing appointment of receiver for LLC).

19

The real question at this juncture is whether the court should appoint a receiver. Appointing a receiver for a solvent entity is "is an extraordinary, a drastic and . . . an 'heroic' remedy. It is not to be resorted to if milder measures will give the plaintiff, whether creditor or shareholder, adequate protection for his rights." *Maxwell v. Enter. Wall Paper Mfg. Co.*, 131 F.2d 400, 403 (3d Cir. 1942) A similar principle governs contempt sanctions in general: When selecting contempt sanctions, a court is obligated to use the least amount of power necessary to achieve the intended outcome. *Aveta*, 986 A.2d at 1188.

Gandhi's original motion failed to show that a receiver is necessary. While this decision was under submission, Gandhi filed a supplemental letter stating that the Companies were exploring a sale of their assets that would render them insolvent. Gandhi may conduct expedited discovery into that issue. If the Companies continue to ignore the Advancement Order, and if Gandhi makes a more detailed factual showing, then a receiver could be warranted.

## 2. The Daily Fine

Gandhi next requests a daily fine to coerce compliance. This court has previously used daily fines to coerce compliance with its orders.[3]

---

[3] *E.g.*, *Bruckel*, C.A. No. 2021-0579-MTZ, at 21 (daily fine of $10,000); *In re Coinmint, LLC*, 2020 WL 5912596, at *5 (Del. Ch. Oct. 2, 2020) (daily fine of $5,000); *Transperfect Glob., Inc. v. Elting*, 2019 WL 5294531, at *1 (Del. Ch. Oct. 17, 2019) (daily fine of $30,000 dollars); *State of Del. v. Indem. Ins. Corp, RRG*, C.A. No. 8601-VCL, D.I. 161 ¶ 5 (Del. Ch. Sept. 25, 2013) (ORDER) (daily fine of $10,000); *Israel Disc. Bank of N.Y.*, 2012 WL 1021180, at *3 (daily fine of $10,000); *New Castle Cnty. Bd. of Educ. v. New Castle Cnty. Educ. Ass'n*, 1978 WL 8417, at *1 (Del. Ch. Nov. 29, 1978) (referring to daily fine of $6,000).

To coerce compliance, the daily fee must exceed the benefits of non-compliance. Hone and the Upshot Fund are both venture capital funds based in the United States. According to the U.S. Venture Capital Index provided by Cambridge Associates, venture capital funds have generated average annual returns of 25.4% over a 25-year period ending on December 31, 2022.[4] As of May 11, 2023, Gandhi had requested and was entitled to advancements amounting to $946,445.16. Using an average annual return of 25.4%, the Companies can earn approximately $658.62 per day by retaining the amounts owed to Gandhi. That figure provides a rough order of magnitude for a daily fine that is proportionate. To avoid any suggestion of mathematical precision and to provide an additional incentive for prompt compliance, this decision rounds up to $1,000.

As a coercive sanction, Hone and the Upshot Fund are jointly and severally liable for a fine of $1,000 per day until they comply with the Advancement Order. So that the Companies can purge their contempt, the fine will start to accrue one week after the date of this decision. If the Companies satisfy their obligations under the Advancement Order, then the coercive fine will not accrue. If they persist in failing to comply notwithstanding the imposition of the daily fine, then Gandhi may seek additional relief.

---

[4] Cambridge Associates, LLC., US Venture Capital Benchmarks Q4 2022, at 4 (2022), https://www.cambridgeassociates.com/private-investment-benchmarks/ (last visited July 14, 2023).

### 3. The Fees And Expenses Associated With This Motion

Gandhi has asked to recover the expenses she incurred pursuing her contempt motion. When a party has been held in contempt, the party injured by the contempt is entitled to an award of expenses for bringing the contempt motion as part of the remedy that is necessary to make that party whole.[5]

Gandhi is entitled to the expenses she incurred pursuing this motion. The parties will determine the amount using the mechanism in the advancement procedures order, but the expenses will be tracked separately so that they are not treated as advancements.

## III. CONCLUSION

The Companies are in contempt. As a sanction, the Companies are jointly and severally liable for a fine of $1,000 per day, beginning one week from the date of this opinion. The Companies must pay the expenses Gandhi incurred pursuing the motion.

---

[5] *Miller v. Steller Enters., Inc.*, 1980 WL 6432, at *3 (Del. Ch. Dec. 22, 1980); *accord Triton Constr. Co. v. E. Shore Elec. Servs., Inc.*, 2009 WL 1387115, at *7 (Del. Ch. May 18, 2009); *Israel Disc. Bank*, 2013 WL 2326875, at *28; *Aveta*, 986 A.2d at 1188.